## ELDRED v. BELL TELEPHONE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued December 7, 8, 1886. — Decided December 20, 1886.

On the facts in this case as stated in the opinion of the court: *Held*, That the jury would not have been warranted in drawing the conclusion of fact from the evidence that there was such an agreement as that sued on; that the relation of the parties was not such as, in contemplation of law, to give rise to such liability; and that there was no error in the instruction of the court below to find a verdict for defendant.

This was an action at law commenced by plaintiff in error as plaintiff to recover the par value of 250 shares in the capi-

tal stock of the defendant in error. Judgment below for defendant. The plaintiff sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Millard R. Powers* (*Mr. L. B. Valliant* was with him on the brief) for plaintiff in error.

*Mr. Henry Hitchcock* for defendant in error.

Mr. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff in error, who was plaintiff below, being a citizen of the State of New York, brought his action at law in the Circuit Court of the United States for the Eastern District of Missouri against the Bell Telephone Company of Missouri, a corporation of that State, to recover $25,000, the price and value of 250 shares of the capital stock of the defendant corporation, of the par value of $100 per share, the personal property of the plaintiff, advanced, furnished, and delivered to the defendant at its special instance and request, to be by the defendant accounted for to the plaintiff. The defendant filed an answer containing a general denial of the allegations of the petition. The case came on for trial before a jury, evidence on both sides was heard, which is fully set out in a bill of exceptions, and the judge instructed the jury to find a verdict for the defendant, which was done. The judgment rendered thereon is sought to be reversed by the present writ of error.

The question presented is, whether there was sufficient evidence in support of the plaintiff's cause of action to require its submission to the jury. It is conceded that there was no express agreement between the parties under which the defendant was bound to pay for the shares in question. The plaintiff's claim to recover was based entirely upon the supposition of a contract to be inferred from the acts of the parties. The undisputed facts on which this claim is founded are as follows:

In October, 1879, the plaintiff, Eldred, had some correspondence with the National Bell Telephone Company of Boston, with reference to acquiring the right to operate telephonic exchanges in Kansas City and St. Louis. The arrangement

which resulted from that correspondence required the organization of a corporation under the laws of Missouri, and the acquisition by it of certain outstanding contracts between the National Bell Telephone Company and the Kansas City Telephonic Exchange, and also of a contract between the former and the American District Telegraph Company of St. Louis. Accordingly, the plaintiff, on December 3, 1879, organized under the laws of that State the Bell Telephone Company of Missouri, the nominal capital stock of the corporation being fixed at $400,000, in shares of $100 each. This stock was to be issued as full-paid to the plaintiff and others named by him as associates, in consideration of the transfer to said corporation of the rights expected to be acquired by him from the National Bell Telephone Company upon the conditions required by it. The plaintiff associated with himself four personal friends, Messrs. Kent and Storke, of New York, and Durant and Smith, of St. Louis, it being necessary, under the laws of Missouri, to have five stockholders as incorporators, agreeing to give them certain proportions of his interest in the rights to be acquired by him and transferred to the corporation. The proportions were to be as follows: Storke 750 shares, Kent 250 shares, Smith 20 shares, and Durant 750 shares, out of 4000, Eldred himself retaining the remaining 2230 shares. No money was paid or to be paid by any of these incorporators for their interests. In the organization of the company, the capital stock was subscribed for and taken up in the manner and proportions just stated, and certificates of stock for these amounts, respectively, were made out with the intention of delivering them to the subscribers. Before any such delivery was made, however, on the 19th day of December, 1879, the transaction took place by which the rights of the American District Telegraph Company were secured to the Bell Telephone Company of Missouri. To accomplish that, it became necessary to make a consolidation, under the laws of Missouri, of the Bell Telephone Company of Missouri, as already organized, with the American District Telegraph Company. The latter was a corporation of Missouri, with a capital stock consisting of 500 shares of $50 each, 263 of which

the plaintiff Eldred owned and controlled. According to the plan of consolidation agreed on, it was necessary to issue to the owners of the capital stock of the American District Telegraph Company 250 shares of the stock in the Bell Telephone Company of Missouri.

The plaintiff, in his examination-in-chief, in answer to a question as to what steps were taken to effect this consolidation, made the following statement:

"We met several times, and I remember that at that time there seemed to be some difficulty about the consolidation of the two companies in consequence of the statute of the state having been changed. There were several meetings held, and I believe the attorneys who had charge of the matter finally made the consolidation under both of the statutes, which necessitated considerable delay. On coming together, we had issued 4000 shares of stock, and we wished to consolidate with the American District Telegraph Company, of which I was then president. I was president of both companies. Therefore, it became necessary to provide for some shares to take up the stock of the American District Telegraph Company. These gentlemen, with whom I had been already associated, four in number, at that time were all personal friends of mine, and I gave them this stock. All the business was like a family operation. Two of the parties were in New York, Mr. Kent and Mr. Storke, and Durant, Smith, and myself were here. Previous to my coming to St. Louis, I had obtained proxies for the purpose of voting the stock of Mr. Storke and Mr. Kent, they not being present, and, as I had agreed with them in regard to the proportion of stock which I was to give them, I did not feel authorized to act for them without authority, and therefore I said that I would advance the 250 shares necessary to make up the capital stock of the American District Telegraph Company out of the proportion which was to be issued to me. I think that was the way it was done. We had some trouble about the minutes under the existing statute, and I think they were fixed up by the attorneys afterwards, after I left the city, or about that time."

A consultation was held between Eldred, the plaintiff, and

Durant and Smith, two of his associates, on December 19, 1879, at the office of the Bell Telephone Company in St. Louis, as to how the arrangement should be consummated. The plaintiff's own statement, on cross-examination as a witness in the case, of this conference, is as follows:

"All that I remember about that particular portion of it is, that it was at no meeting of the board; so far as my recollection goes, Mr. Durant was the only person present, and we found by figuring up the stock that we hadn't enough shares to take in the American District Telegraph Company of St. Louis. These gentlemen in interest were all personal friends of mine. Some of them were in New York, and I had no authority to make any concessions for them, and I therefore agreed with Mr. Durant, who was vice-president and general manager of the company, to advance 250 shares of the stock of the Bell Telephone Company of Missouri, so that we might take up the entire capital stock of the American District Telegraph Company." In answer to the question, "You say that you agreed. What did Durant say?" he said, "Mr. Durant didn't have much to say about it; I was the owner of the property, and he acquiesced generally in all I did."

On the same day a meeting of the stockholders of the Bell Telephone Company of Missouri was held at its office, at which the three persons named, Durant, Eldred, and Smith, were present. Eldred was chairman of the meeting, and a preamble and resolution offered by Durant were unanimously adopted, and are as follows:

"Whereas the National Bell Telephone Company (a corporation duly organized under the laws of the State of Massachusetts) has, by agreement with H. H. Eldred, granted the said Eldred certain valuable rights, concessions, and franchises under what are known as the Bell telephone patents and other patents owned and controlled by the said company, said agreement being contained in a written proposition duly accepted by the said Eldred, and to be fully set forth in contracts to be duly executed by the said National Bell Telephone Company, pursuant to said agreements; and whereas, the said rights, concessions, and franchises, so acquired by said Eldred, were

by him transferred to the parties hereinafter named, with in-
terests in the proportion hereinafter set forth, as follows: H.
L. Storke, 750; George H. Kent, 250; E. A. Smith, 20; George
F. Durant, 750; H. H. Eldred, 2230; total, 4000; said parties
being the owners of said interests at the time of the incorpora-
tion of this company, and being the sole incorporators of this
company; and whereas, said exclusive rights, concessions, and
franchises constitute property rights of great value to this
corporation under its charter:

"_Resolved_, That in consideration of the complete assign-
ment to this corporation in due form of all the rights, title,
and interest of said parties in said exclusive rights, conces-
sions, and franchises, so that the same may be fully possessed,
enjoyed, and enforced as by said Eldred, this corporation
hereby allots and sets apart to said parties 4000 full-paid
shares of its capital stock, constituting the authorized capital
stock of said company, to each of said parties a proportionate
part of said 4000 shares, according to his interest in said
rights, concessions, and franchises, and according to the sub-
scription of each to the capital stock of this company, and
constituting a full payment of said subscription: H. L. Storke,
750 shares; George H. Kent, 250 shares; E. A. Smith, 20
shares; George F. Durant, 750 shares; H. H. Eldred, 2230
shares; and, in consideration of the agreement of H. H.
Eldred to surrender to this company 250 shares of stock so
allotted to him for the purpose of effecting a consolidation
with the American District Telegraph Company of St. Louis,
a certificate of 1980 shares shall be issued to said Eldred, and
the 250 shares so surrendered shall be retained in the posses-
sion of this company, subject to issuance hereafter for said
purpose of consolidation; and the officers of the company are
directed to issue in due form certificates of stock to said par-
ties above named, and to do and perform all acts necessary
and proper for the full acceptance on the part of this company
of the aforesaid agreements and propositions of the National
Bell Telephone Company in the execution of contracts or
otherwise."

Accordingly, the original certificate for 2230 shares of stock

made out to Eldred, but never delivered, was destroyed, and another certificate prepared for 1980 shares, which was delivered to and received by Eldred.

It further appears from the evidence, that the plaintiff advanced to the defendant $6000 in money for the purpose of meeting the expenses of starting, which was afterwards repaid by it to him, and for the rights acquired from other sources than the American District Telegraph Company of St. Louis the Bell Telephone Company of Missouri subsequently paid the Western Union Telegraph Company, which was in fact their owner, the sum of $75,000.

The implied contract relied upon by the plaintiff in this case is of that class in which the promise of the defendant is to be inferred from the acts and conduct of the parties. The contract assumed to be thus proven is, that, in consideration of 250 shares of its capital stock owned by the plaintiff and advanced by him to the defendant, at its instance and request, to be used for its benefit and advantage, and accepted by the defendant and so used, the defendant undertook and promised to pay the reasonable value thereof. The facts and circumstances relied on to justify this assumption do not seem to us to warrant it. It is a misconception of the transaction, as we view it, to construe it either as a loan of stock by the plaintiff to the defendant, to be returned either in specie or accounted for in value, or as a sale of stock by the plaintiff to the defendant at what the stock was reasonably worth. In truth, the dealing supposed to result in this bargain does not appear to have taken place between the plaintiff and the defendant, but between the plaintiff and his associates, corporators in the original corporation oefore the consolidation. It was an arrangement having reference to the relative rights and interests of the corporators themselves, and consisted in the readjustment of the relative proportions, *inter sese*, according to which they should hold the capital stock of the company. There had been an agreement by which the 4000 shares should be allotted among them, so that the plaintiff might have 2230; the new agreement was that that allotment should be so changed as that the plaintiff would have but

1980 ; the 250 shares in question being surrendered out of the
original allotment for another and different use in the reorga-
nization of the company, so as to take in other stockholders
and other interests. The plaintiff in his testimony distinctly
states, that, when it became apparent that 250 shares of the
stock were required for this purpose, he did not feel at liberty
to call upon his associates for a contribution, as he had
promised them the number of shares specifically designated.
It is difficult to see how this does not also exclude the liability
he now seeks to enforce against the corporation, which is but
another mode of compelling his associates now to make that
contribution, which he says he did not feel at liberty then to
exact. The benefit conferred, assumed to be the consideration
for the promise to return or repay which is sought to be
enforced, was not in fact conferred upon the existing corpora-
tion sued as a defendant; the only difference in its situation,
resulting from the transaction, is that the stockholders of the
American District Telegraph Company, instead of Eldred,
became the owners of the 250 shares surrendered by the
plaintiff, for which they paid by a transfer of the rights and
property of the District Telegraph Company. The real ben-
efit and advantage growing out of the transaction enured
exclusively to the original corporators in the first Bell Tele-
phone Company of Missouri, including the plaintiff himself,
as it was the means whereby that corporation was enabled
successfully to accomplish the object of its incorporation, but
against them, as has already been shown, the plaintiff makes
no claim. To enforce his claim against the existing corpora-
tion is not only to compel his original associates to contribute,
but also the stockholders of the District Telegraph Company,
who became, by virtue of the transaction, stockholders in the
defendant corporation; but they made no such bargain as
that. The transaction, whatever it was, was reduced to writ-
ing at the time and put on record, as a part of the proceedings
of the stockholders of the Bell Telephone Company of Mis-
souri, in the recitals and resolution already set out, and is cor-
rectly characterized in them as an agreement on the part of
the plaintiff to surrender to the company 250 shares of the

stock previously allotted to him, for the purpose of effecting a consolidation with the American District Telegraph Company of St. Louis, the 250 shares so surrendered to be retained in the possession of the company, subject to be issued thereafter for that purpose. There is nothing whatever in this statement to suggest or to warrant the conclusion that there was any sale of this stock by the plaintiff to the company, or any loan or advance of it for its uses, for which it was expected any return or payment should be made.

The plan for the organization of the company, both in its general outlines and in its details, was the plaintiff's own scheme, of which he continued to have control until its consummation, as he himself testifies. The original plan was, that he was to retain 2230 shares out of 4000 of the capital stock of the new company; but it was an essential part of his undertaking to acquire the property and franchises of the American District Telegraph Company of St. Louis. He became satisfied that the best way to accomplish that was by the consolidation of the two companies as actually effected; and to ensure this it became necessary for him to diminish the relative quantity of his interest in the capital of the consolidated company; and to this end, and for this consideration, as actually and fully expressed in the resolution adopted by the stockholders, of whom he was chief, he agreed to surrender to the company 250 shares of the stock previously intended for himself. He asked no one to contribute; he certainly did not contemplate the return of the stock in kind, for that was impossible; it is not a reasonable inference, from the facts and circumstances, that he expected any payment. It is clear, beyond doubt, that those with whom he was dealing had no reason to believe the existence of any expectation of that kind on his part. It was certainly treated and considered at the time as a part, and a necessary part, of the arrangement by which the plaintiff himself performed his own engagements with the National Bell Telephone Company for the purpose of putting into successful operation the scheme which he had organized by the formation of the Bell Telephone Company of Missouri.

The plaintiff, as a part of his case, read in evidence from the minute book of the Bell Telephone Company of Missouri the act and agreement of consolidation between it and the American District Telegraph Company of St. Louis, in which it is recited that the party of the first part, the Bell Telephone Company of Missouri, "has purchased and is now owner of 250 shares of its capital stock;" and this recital is relied upon as an admission that the transaction was one of purchase and sale, and not a voluntary surrender of the right to unissued stock. The recital, however, has no effect as an estoppel, the plaintiff being no party to the deed which contains it, and acquiring no rights on the faith of it; and it is in fact an innocent mis-description of a transaction, the real nature of which fully and unambiguously appears from the other record of the same company, where it speaks of and records the transaction as it occurred and when it took place, being made, indeed, for that very purpose.

We are, therefore, of opinion that the jury would not have been warranted in drawing the conclusion of fact, from the evidence in the case, that there was any such agreement as that sued on, and that the relation of the parties, as shown in the circumstances of the transaction, was not such as, in contemplation of law, to give rise to any such liability.

The ruling of the Circuit Court was, therefore, correct, and its judgment is

*Affirmed.*